The evidence on the part of plaintiff was to the effect that Lucy J. Carland owned a certain building, 52 and 56 Broadway Street, Asheville, N.C. That Eugene Carland was her husband. That the building consists of three separate floors, size of each being 75 by 100 feet. That it had been used by a Ford agency and thereafter occupied and used for a laundry business. At the time it was used as a laundry, a hole about four feet square was cut in the second floor as a laundry chute, to send the laundry down stairs from the second to the first floor. The defendant, Standard Garage and Sales Company, Incorporated, was handling Studebaker cars and had rented the building from 1 March, 1930. Preparatory thereto, the building was being renovated and put into shape for occupancy by said defendant, Standard Garage and Sales Company, Incorporated, by 1 March, 1930. *Page 16 
In his complaint the plaintiff alleges that the defendant "Standard Garage and Sales Company, Incorporated, through its duly authorized representative, general manager, and president, S. A. Isenhour, did on the morning of 27 February, 1930, employ the plaintiff to haul and carry away the remainder of the waste paper, scrap lumber rubbish and refuse from said building, the consideration for said employment being that the plaintiff could have said materials for the hauling of same. That on the morning of 27 February, 1930, while the plaintiff was carrying out his duties under said employment on said premises, he did go to the second floor of said building to assist in the loading of one of his trucks; that while so doing he stepped upon a place in said floor filled and covered and concealed with trash, consisting mostly of waste paper which suddenly and without warning gave way with his weight, causing him to fall through said floor on down broad-side upon the concrete surface of the floor fourteen feet below, thereby seriously and in all probability permanently injuring him. . . . That the Standard Garage and Sales Company, Incorporated, had knowledge or with the exercise of reasonable care and diligence would have known of the existence of said defect, dangerous condition and nuisance, but that despite said knowledge did negligently allow same to continue without repairing or abating it and without placing any safeguards or warnings around same, and that while said portion of said premises were in said condition, did employ, invite, license and direct the plaintiff to go in, about and over the very place where said defect, dangerous condition and nuisance existed without warning him of same, with the full realization that he would in all probability be injured, as he was."
The defendant, Standard Garage and Sales Company, Incorporated, (1) denied negligence; (2) set up plea of contributory negligence; (3) action subject and bound by the provisions of North Carolina Workmen's Compensation Act; (4) that plaintiff was an independent contractor. "That they selected their own means of doing the work and this answering defendant retained no control over them whatsoever with respect to the manner in which the work was to be done and performed, and was interested only in the final result to be accomplished, to wit: the removal of the lumber, trash, debris and other waste material from the floors of said building." (5) Assumption of risk.
The evidence of plaintiff fully sustained the allegations of the plaintiff. The plaintiff testified, in part: "On my arrival at the building, I drove up the ramp from the first floor to the second floor and parked my truck up there about the trash pile. I went from there to where my trucks were on the third floor. One of my trucks was on the third floor, and one on the second floor. I went up the ramp and backed *Page 17 
my truck back to the trash pile. I walked down to the first floor and met Mr. Isenhour, and asked him if the verbal contract he made with my brother-in-law (Frank J. Gasperson) the day before was okeh. He said it was, and I went back to the second floor then and started to load my truck. I went back by myself and when I got back George Conley (an employee of plaintiff) was standing at the back of the truck that I drove up there. I told George that we will just go ahead and load the truck — fill it up — and so then we went ahead. There was trash on the floor, paper and laths, and rubbish, etc. About two truck loads. From the head of the ramp, I imagine, and piled up there. Piled there in a pile about two feet high. It was a round pile, two big truck-loads of it, it covered a space on the floor of twenty feet square, I imagine. I went to the pile, I took up an armful from the pile and carried it over to the truck. I went back to the pile to get another armful, taking it off the top in order to get it loaded and when I went to get it and got on the top of the pile of rubbish on the floor or whatever it was, trash, etc., it suddenly gave away with me and I went to the concrete floor below — about fourteen feet approximately. I landed on the concrete floor on my wrist, on my right side and shoulder and hip. I couldn't get up. I just laid there and about that time one of my employees got to me. I asked him to please do something for me. . . . Prior to the time that place gave away with me and I fell through the floor I could not look at the place and tell whether there was anything wrong with it. Court: Had you any knowledge or information that there was a place there? A. I hadn't been advised, your Honor. Mr. Brown: Anything to put you on notice in any way? A. No, sir. Q. How long after you went back upstairs from the time you came down to see Mr. Isenhour to confirm the agreement was it before you fell? A. Well, I had time to walk back to the second floor, and put one armful into the truck, and go back on top of the pile. Walked up to the second floor, and carried one armful of rubbish to the truck, I imagine about a period of four or five minutes." A trap-door of about four or five feet square of plank was made to cover the hole.
After plaintiff had fallen through the opening in the floor, George Conley, a witness for plaintiff, testified, in part: "After they had left. Mr. Isenhour and the carpenter went by the room over in front of me. Mr. Isenhour was fussing with him and said, `I told you to fix that floor. Get busy and fix it.' Q. When did he say he told him? A. He didn't say when he had told him. . . . Mr. Pearson had just left when he was telling him and he went up right away to fix the floor and that was when I heard Mr. Isenhour make the statement to the carpenter. Q. What statement did he make? A. He said, `I told you to fix that floor. Get busy and fix it.' Q. That was after the thing *Page 18 
happened he told him that. Court: That wouldn't tend to show knowledge. He got knowledge of it when he fell. Mr. Brown: Q. How long had Mr. Pearson been gone? A. They just pulled out of the building with the truck. Mr. Isenhour went up the ramp in front of me, and he got up there and looked at the hole. . . . I did not see any door around there; I didn't notice the place prior to the time that Mr. Pearson fell. I couldn't tell it was there. I hadn't done anything before Mr. Pearson came up. The height from the concrete floor was about 14 feet. . . . As to the condition of the floor I couldn't tell anything wrong where the trash was. There was some scattered. Most of it was in this pile and the other part of the floor was clean. The hole must have been under the trash. He put one armful of papers in the truck. I was shoveling mine in there. I didn't see no hole until Mr. Pearson fell through it. There were laths and papers in the pile, not much lumber at all; wooden laths. Where the truck was, it was clean. There is a great big floor, you could drive all over the floor."
It was in evidence that the trash pile consisted of quite a lot of paper and scrap lumber, about 18 or 19 feet square, and covered the laundry chute. It was in evidence that about 20 or 25 minutes after plaintiff's injury a witness went to the second floor and the door to the chute was sitting against the wall.
Frank J. Gasperson, a witness for plaintiff, testified, in part: "When I was talking to Mr. Isenhour I agreed to clean up the place for the lumber. That was the only contract with him and he told me to go to it, and he had nothing to do with the manner in which I performed the work. He told me he wanted the first floor cleaned up first. He had men doing work on each floor, the first, second and third. Outside of cleaning the first floor first, we actually started doing the work and did it in any way we wanted to, but Mr. Isenhour didn't tell me how to do the work, except that he wanted the first floor cleaned first. It had to be swept with the broom and I cleaned up some with the broom. Mr. Isenhour took me on the first, the second and the third floor on the afternoon of the 26th and showed me the stuff that had to be moved and pointed out the stuff he didn't want moved, but he told me no particular manner in which to do the work. In the afternoon Mr. Isenhour showed me the stuff on the second floor a good deal of the trash was in this pile, a little bit was scattered, but the floor was pretty clean except this one pile. I made the contract with Mr. Isenhour for the Transfer Company and reported it that afternoon to Mr. Pearson and to my father and they approved what I had done and I didn't go on the second floor that morning until after the accident. I was on the third floor." *Page 19 
Oscar Fore, a witness for plaintiff, testified, in part: "After we had taken him to the office (speaking of plaintiff), I came back and went upstairs and looked at the hole. It was an old hole and looked like it had been a laundry chute. There was a lot of paper and things about it where he fell through. Some paper and stuff had went down in the hole and lodged in there where he had stepped through on the paper and stuff. I didn't discover the hole the afternoon before. Mr. Isenhour carried us over the building and over the three floors. He never said anything about the condition of the building."
The evidence on the part of defendant, Standard Garage and Sales Company, Incorporated, was a denial of the material evidence introduced by plaintiff. The jury rendered a verdict for plaintiff.
The judgment of the court below was as follows: "The above entitled cause coming on for hearing and having been heard by his Honor, A. M. Stack, judge presiding over the August, 1931, regular civil term of the Superior Court of Buncombe County, North Carolina, and a jury and it appearing that the jury for its verdict in said cause answered the issues submitted to it in same in favor of the plaintiff and against the defendant, Standard Garage and Sales Company, Incorporated. This action as against the defendant, Eugene Carland and Lucy J. Carland, having been nonsuited on the motion of said defendants during the course of the trial. The issues and answers thereto submitted to the jury being as follows: (1) Was the plaintiff injured by the negligence of the defendant as alleged in the complaint? Answer: Yes. (2) If so, what damages, if any, is the plaintiff entitled to recover by reason thereof? Answer: $946.00. Now, therefore, it is upon motion of Sanford W. Brown, attorney for the plaintiff, hereby considered, ordered and adjudged, that the plaintiff have and recover of the defendants, Standard Garage and Sales Company, Incorporated, judgment in the sum of $946.00 and that said defendant pay the costs of this action to be taxed by the clerk."
The defendant, Standard Garage and Sales Company, Incorporated, made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones will be considered in the opinion.
At the close of plaintiff's evidence the defendants made motions for judgment as in case of nonsuit. The motion of the Carland defendants was granted. The defendant Standard Garage and Sales Company, Incorporated, introduced evidence and at the close of all the *Page 20 
evidence made a motion for judgment as in case of nonsuit. C. S., 567. This motion was overruled, and in this we can see no error.
It is the well settled rule of practice and accepted position in this jurisdiction, that, on a motion to nonsuit, the evidence which makes for the plaintiff's claim and which tends to support his cause of action, whether offered by the plaintiff or elicited from the defendant's witnesses, will be taken and considered in its most favorable light for the plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom.
We see no evidence on the record as to contributory negligence or assumption of risk. There are no facts of record to indicate that the provisions of the North Carolina Workmen's Compensation Act is applicable (1) to casual employment (2) nor to any private corporation that has regularly in service less than five employees in the same business within the State. Public Laws 1929, chap. 120, sections 2(b), 14(b).
We do not think the issues tendered by defendant were the proper ones, and therefore the refusal to submit same by the court below was not error. In regard to the evidence admitted over defendant's objection, if error, it was not prejudicial. We agree with defendant that "It was a contract for the removal of rubbish"; it is immaterial on the facts in this case what the relationship is termed — independent contractor, master and servant, inviter and invitee, etc. The defendant, Standard Garage and Sale Company, Incorporated, owed a duty to plaintiff, that its alter ego, Isenhour, under the contract with plaintiff, should not without warning to him of the hidden danger, allow and permit him to remove the trash. It is in evidence, on the part of plaintiff, that the alter ego of defendant knew, or in the exercise of due care ought to have known, of the laundry chute hole, a dangerous pitfall, that it was concealed by the trash being thrown over it, and plaintiff was ignorant of its existence, and in the exercise of due care could not discover it.
In Bailey Personal Injuries, 2d ed. Vol. 1, part sec. 121, p. 307, the law is stated as follows: "It is a principle universally recognized that the care required of a master is such as is commensurate with the danger. Trap-doors, as the designation implies, are at best dangerous traps. Thus, it was held, where a trap-door is maintained in the hall of a building, it is the duty of the master when it is open to provide barriers, or give warning to employees who have occasion to pass in the hall."
Under negligence — circumstances implying liability — English Ruling Cases, Vol. 19, p. 64, is the case of Indenmaur v. Dames, L. R., 2 C. P., 311. In that case it was held: "Upon the premises of the defendant, a sugar-refiner, was a hole or chute on a level with the floor, used for *Page 21 
raising and lowering sugar to and from the different stories of the building, and usual, necessary, and proper in the way of the defendant's business. Whilst in use it was necessary and proper that this hole should be unfenced. While not in use, it was sometimes necessary, for the purpose of ventilation, that it should be open. It was not necessary that it should, when not in use, be unfenced; and it might at such time, without injury to the business, have been fenced by a rail. Whether or not it was usual to fence similar places when not in use, did not appear. The plaintiff, a journeyman gas-fitter in the employ of a patentee who had fixed a patent gas-regulator upon the defendant's premises, for which he was to be paid provided it effected a certain amount of saving in the consumption of gas, went upon the premises with his employer's agent for the purpose of examining the several burners, so as to test the new apparatus. Whilst thus engaged upon an upper floor of the building, the plaintiff, under circumstances as to which the evidence was conflicting, but accidentally, and, as the jury found, without any fault or negligence on his part, fell through the hole, and was injured: Held, that, inasmuch as the plaintiff was upon the premises on lawful business in the course of fulfilling a contract in which he (or his employer) and the defendant both had an interest, and the hole or chute was from its nature unreasonably dangerous to persons not usually employed upon the premises, but having a right to go there, the defendant was guilty of a breach of duty towards him in suffering the hole to be unfenced."
Shirley's Leading Cases in the Common Law, 3d ed. p. 275. In Shirley,supra, the interesting case of Bird v. Holbrook, 4 Bing., 628, is digested as follows: "The defendant, having had some valuable flowers and roots stolen from his garden, which was at some distance from his house, had set a spring-gun. The plaintiff, a young fellow of nineteen, climbed a wall, during the daytime, in pursuit of the stray fowl of a friend, and got shot. In spite of the plaintiff being thus a trespasser, it was held that the defendant was liable in damages. `There is no act,' said Best, C. J., `which Christianity forbids, that the law will not reach; if it were otherwise, Christianity would not be, as it has always been held to be, part of the law of England. I am, therefore, clearly of the opinion that he who sets spring-guns, without giving notice, is guilty of an unhuman act, and that, if injurious consequences ensue, he is liable to yield redress to the sufferer.'"
In the annotation of Warner v. Synnes (114 Org., 451), 44 A.L.R., at p. 982-3, we find the following under general discussion: "The ratiodecidendi in numerous cases is a doctrine which may be formulated thus: Where the premises on which the stipulated work is executed remain under the control of the principal employer while the contract *Page 22 
is in course of performance, a servant of the contractor is in the position of an invitee, and as such entitled to recover for any injury which he may sustain by reason of the abnormally dangerous condition of the premises or plant thereof, if the evidence shows that the principal employer was, and the servant was not, chargeable with knowledge, actual or constructive, of the existence of that condition."
In setting out the duty of employer to employee, we find the same well stated in 18 R. C. L., p. 591-2: "A question that has often been under judicial consideration is whether an employer owes to his employees any duty to box, fence, or guard the appliances and machinery in the vicinity of which the work is done. The rule formerly was generally recognized, and is supported by some recent decisions, that the employer, is, in the absence of statute, under no obligation to his employees to affix guards to gearing, shafting and other dangerous moving parts of machinery. No doubt the guarding of some appliances is unnecessary and impracticable, the danger being obvious and avoidable by employees; but public policy in respect of such matters has in recent times undergone a very decided change, and the tendency is to hold the employer negligent in failing to guard all dangerous appliances, especially is this noticeable in the rulings of the late cases. And, of course, if it can be shown that an injured employee was not informed of or did not appreciate the danger of the unguarded appliance, it is not to be supposed that a recovery will be denied in any jurisdiction." Boswell v. Hosiery Mills, 191 N.C. at p. 556-7.
The duty of the owner of premises to those who come on them is fully and well stated in Brigman v. Construction Co., 192 N.C. 791, by Brogden, J.;Hughes v. Lassiter, 193 N.C. 651.
In Jones v. R. R., 199 N.C. at p. 4, is the following: "After setting forth in an excerpt from Sweeney v. R. R., 10 Allen, 368, 87 Anno. Dec., 544, the usually applied principle that a licensee who enters on premises by permission only, without enticement, allurement, or inducement held out to him by the owner or occupant, cannot recover damages for injuries caused by obstructions or pitfalls, the Court pertinently said: `Nor does the application of this principle protect from liability the owner of a lot or a railroad company who, with knowledge of the user of his property as a pathway across or along it, places without warning to those likely to use the pathway, a new and dangerous pitfall or obstruction."
We can see no error in the charge of the court below. We think the charge covered the law applicable to the facts. Part of the charge given, which covers the law in the case, is as follows: "Now the action is based on alleged negligence. Negligence is the failure to do or not to do what an ordinarily prudent person would do or would not do under the circumstances in the case. In other words, negligence is a failure to do *Page 23 
as a prudent person would do under those particular circumstances or his failure to do what a prudent person would do under those circumstances. Negligence alone, however, would not be sufficient to entitle this plaintiff to recover. If he has only shown negligence on the part of the defendant alone that would not entitle him to recover. Before the plaintiff can recover of the defendant he must prove to your satisfaction, by the greater weight of the evidence, two propositions: First: That he was injured by the negligence of the defendant, as alleged in the complaint, and secondly, that that particular negligence of the defendant was the proximate cause of his injury or damage. Proximate cause is the real cause of the damage and the cause without which it would not have occurred. . . . Now, the duty of the defendant to the plaintiff was, under the circumstances of the evidence, to furnish him a reasonably safe place in which to do his work. That is, not absolutely to furnish him, but to exercise ordinary care in furnishing him with a reasonably safe place to work. If the defendant owed him that duty, and failed to perform that duty it would be guilty of negligence; but, if it performed its duty, it would not. That is to say, if the defendant knew that the hole was there and saw it covered up by the paper and rubbish and did not inform the plaintiff of the condition, why that would be negligence. Or, if the defendant, by the exercise of ordinary prudence and care would have known of the dangerous condition; that the hole was there, and no door over it, but simply papers and trash and rubbish, in that event it would be guilty of negligence. But if the defendant did not know that the hole was there, or by the exercise of ordinary diligence and care it could not have learned it was there, or if the last time he saw it, just before the plaintiff fell through the hole it was covered with a door, then there would be no negligence on his part and would find in favor of the defendant." In the judgment of the court below, we find
No error.